## Brown *vs.* Gay.

In ascertaining the boundaries of the lots of land into which a township may have been laid out, the actual locations by the original surveyor, so far as they can be found, are to be resorted to; and if any variance appears to exist between them and the proprietors' plan, the locations actually made control the plan.

Where two adjoining lots were laid down on the proprietors' plan as being *each* of the width of a hundred rods, but their *united* actual width was only one hundred and seventy six rods; and there was no evidence of the original location of the line between them; it was holden that the plan was to be resorted to, as the next evidence; and this representing them as of equal width, the deficiency was apportioned equally to each lot.

And if there be an excess, under the like circumstances, it is to be equally divided.

If the owner of a parcel of land, through inadvertency, or ignorance of the dividing line, includes a part of the adjoining tract within his inclosure; this does not operate a disseisin, so as to prevent the true owner from conveying and passing it by deed.

THIS was a writ of entry in which possession was demanded of a lot described as " lot No. 4, on *Bullen's* plan." The tenant owned the adjoining lot numbered *three* on the same plan; and the question was, whether a part of the land inclosed by the tenant, belonged to the latter lot, or to the former.

The surveyor, at the trial before *Weston J.* testified that he intended to make, and supposed he did make each of the lots in that survey of the width of one hundred rods, and that he marked trees for the corner boundaries of the several lots. The corner boundary made by him between the lots numbered *three* and *four* originally was a beech tree; but the place where it stood was now wholly unknown. The monuments between lots numbered 2 and 3, and lots numbered 4 and 5, which were made by the surveyor, are now existing; but the distance between them is only one hundred and seventy six rods, instead of two hundred, as rep-

resented on the plan.    This error, the surveyor testified, must have been occasioned by a mistake in reckoning, at the time of making the survey of one of these lots, but which lot, he was unable to ascertain.    The plan of the proprietors represented all the lots as being each one hundred rods wide, and the lots numbered 2, 3, 4 and 5, as lying contiguous to each other, in the same range.

Before the date of the demandant's deed, the tenant, in 1815, had entered on lot numbered *three*, under his own title deed, and had caused it to be surveyed by the original surveyor, of the width of one hundred rods, and built his fence conformably to this survey.

His counsel hereupon contended, *first*, that the demandant ought not to recover, unless he should prove that the original monument, made by the surveyor between the two lots, was situated at the point to which he claimed;—and *secondly*, that the tenant being in actual possession of the disputed land at the date of the demandant's deed, nothing passed by this deed, the grantor being disseised at the time of making it; and so this action could not, on any principles, be maintained.

The Judge instructed the jury that if the demandant had failed to satisfy them that the beech tree, the original monument between lots numbered 3 and 4, was at the distance of one hundred rods from the monument between lots numbered 4 and 5, he could not *recover* to *that extent* ;—and that if the tenant had not proved to them that the beech tree was at the distance of one hundred rods from the monument between lots numbered 2 and 3, he could not *defend* to *that extent* ;—and that if they had no proof to satisfy them where the tree originally stood, they must regard it as having never existed ; in which case they must be governed by the plan, and treat the lots as of equal width, though it be less than a hundred rods.

He also instructed them, that if the tenant were in possession of the premises defended by him, at the date of the deed to the demandant, he was in possession claiming it as a *part of lot numbered three* ; that if they should find it not a part of that lot, he was in by *mistake* ; and that *such* a possession would not operate a disseisin of the grantor.

Under these instructions they returned a verdict for the demandant for one half the premises defended, adopting a divisional line which made both the lots of equal width ;—which was taken subject to the opinion of the whole Court upon the correctness of the Judge's instructions.

*Evans*, for the tenant.

In settling the facts in this case, the jury erred in applying a rule of apportionment to lots bounded by known monuments. It was admitted that the premises defended were part of lot numbered *three*, if that lot was entitled to the width of a hundred rods. The deficiency was occasioned by a mistake in surveying one of the lots ; but it was not known in which of them this happened. The jury have therefore done injustice to one party or the other, in not allowing him the full measure of a hundred rods. Now every demandant must recover only on the strength of his own title ; and in this case he should have shewn that *his* lot was in fact laid out a hundred rods wide ; and failing to do this, the tenant is protected in his possession by the rule of *melior est conditio possidentis*.

Farther, as the tenant was in possession at the time of the making of the demandant's deed, nothing passed by that deed, the grantor being disseised. Nor was this a possession by *mistake*. He claimed the land as part of the lot numbered *three*, and as such he still maintains it.

*R. Williams*, on the other side, was stopped by the Court, whose opinion was afterwards delivered as follows, by

Weston J. The tenant is the owner of lot numbered three, according to *Bullen's* plan, and the demandant, by a subsequent deed, of lot numbered four, according to the same plan. A verdict has been returned for the demandant, for a portion of the demanded premises, as constituting a part of number four ; and one of the questions raised between the parties is, whether, upon this point, the verdict is justified by the evidence. The plan was made in pursuance of an actual survey ; and trees were marked as the corner bounds of the several lots. The lots were design-

Brown v. Gay.

ed to be each one hundred rods in width ; and they are thus represented on the plan. The monuments, originally marked and established by the surveyor, between numbers two and three, and between numbers four and five, were proved to be still existing ; but the monument between three and four could not be found ; nor could the place where it stood be ascertained. The space between two and five, instead of being two hundred rods, as by the plan it should be, is found to be only one hundred and seventy-six rods and fourteen links. The surveyor testifies that there must have been a mistake in the survey of one of the lots, but that it is impossible for him to ascertain in which.

Upon these facts, the counsel for the tenant contends, that the burthen of proof is upon the demandant, before he can restrict the owner of number three to less than one hundred rods, to shew that, by the original location, his lot was thus restricted. The same position might, with equal propriety, have been taken by the owner of number four, if he had been in possession, to the extent of one hundred rods in width, and the owner of number three had brought his action to recover part of it. The rights of the parties do not depend upon their respective possessions ; but upon a sound construction of the deeds and of the plan, which forms a part of them. The original locations by the surveyor, as far as they can be found, are to be sustained ; and if any variance appears to exist between them and the plan, the locations actually made control the plan. Applying these principles to the facts, it appears that the distance between two and five must be limited to one hundred and seventy-six rods and fourteen links. It being impossible now to fix the bounds between numbers three and four, as originally made by the surveyor, the plan remains as the only guide, by which the division can be ascertained. By the plan it appears, that the space between two and five, is exactly divided between three and four ; and there being nothing to control the plan, this space must therefore be equally apportioned to the owners of three and four, in conformity with the verdict.

The same rule would have prevailed, if the distance between the monuments fixed, had been found to exceed that which is represented on the plan ; a case of much more frequent occur-

'rence.   In the case before us, it would not accord with the plan to give to number three, because it precedes four in the series, a width of one hundred rods, throwing the deficiency altogether upon number four.   So, if the distance had been three hundred rods, it would have accorded as little with the plan, to have restricted number three to one hundred rods, and to have given to number four the whole excess.   The same principle of apportionment would equally apply, where an excess or deficiency was found to exist, in the estimated distance, between fixed monuments, divided into any given number of lots ; where a plan is the only guide, by which to determine their location.   For instance, if the distance between two rivers or streams, at a certain point, and in a certain direction, be assumed to be one thousand rods ; and the whole be divided into ten lots, of one hundred rods each in width, and thus delineated, without any actual survey, on a plan, numbered from one to ten inclusive ; and the lots be sold severally, referring to such plan ; if the distance between the two rivers or streams be actually found, upon the face of the earth, to be fifteen hundred rods, the rule of apportionment requires that, the whole space being regarded as consisting of one thousand parts, one hundred should be assigned to each lot.   The fact that each of these parts proves to be a rod and an half, instead of one rod, in length, as represented on the plan, has no tendency to vary the principle.   The plan in the case supposed, by which alone the location can be made, extends the ten lots over the whole space, and gives to each lot an equal proportion.

It is further contended that, as to the premises, for which a verdict has been returned for the demandant, he has made out by the evidence no title thereto ; inasmuch as his grantor, as it is insisted, at the time of the execution of the deed by him, was disseised of this part of the land by the tenant, and that therefore nothing passed by the deed.   The tenant has no title to any part of number four, nor does he pretend to have any.   He is the owner of number three ; and he claims and defends the premises in dispute, as a part of that lot.   If they are no part of that lot, his claim is plainly founded in mistake.   If the owner of a parcel of land, through inadvertency or ignorance of the dividing line,

Joy *v.* The County of Oxford.

includes a part of an adjoining tract within his enclosure, this does not operate a disseisin, so as to prevent the true owner from conveying and passing the same by deed.

It appearing to the Court that the jury were properly instructed by the presiding Judge, upon both the points made, there must be judgment on the verdict.